IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CR NO. 09-219 (PLF) |
| : | |
| ROBERT NIELS KRAAIPOEL, : | |
| a/k/a NIELS KRAAIPOEL, : | |
| : | |
| Defendant. : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Robert Niels Kraaipoel, hereby files this sentencing memorandum. In light of the government's memorandum requesting that Niels[1] be placed on probation, this memorandum is not as extensive as it would ordinarily be. Niels respectfully requests that the court follow the government's considered recommendation.

**FACTS**

The facts are set forth in the government's sentencing memorandum and in the presentence report. Niels does not dispute them in any material way.

---

[1] Mr. Kraaipoel is known by his middle name because his father is also named Robert Kraaipoel. For ease of differentiating the two in this memorandum, they will be referred to as Robert (the father) and Niels (the defendant in this case).

**DISCUSSION**

I.     **Introduction**

Niels is 43-years old.  He was recently married for the first time to an Iranian woman, who has just received permission to immigrate to the Netherlands.  He is attempting to build a business - - and rebuild his life - - in selling composting devices.  He has been steadily employed over the years and served his country honorably in the military.  He has no prior criminal record of any kind.

From shortly after the time the government began its investigation into the exporting of materials to Iran by Robert and Niels, Niels has cooperated extensively with the government.  Niels first traveled to Dublin, Ireland, in January 2008, to meet with several U.S. law enforcement agencies.  He underwent extensive debriefings and provided numerous documents to provide the government a complete picture of his activities.

In September 2009, Niels came to the U.S., along with Robert.  Niels participated in additional extensive debriefings, pleaded guilty to the charges, and testified before a grand jury.  Niels came to the U.S. voluntarily, thus waiving extradition proceedings.

In January 2010, government agents went to the Netherlands to the offices where Robert and Niels worked.  They provided further documentation to the government and were debriefed again.  In July 2010, Niels came to the U.S. again for further debriefings and grand jury testimony.  He also answered further inquiries from the government over

the phone during this time period.

## II.     Sentencing Factors

In light of <u>United States v. Booker</u>, 543 U.S. 220 (2005), the court must consider the factors set forth in 18 U.S.C. § 3553(a) in imposing sentence. In the present case, in light of Niels's cooperation, the government is requesting a sentence of probation. Such a sentence is perfectly consistent with § 3553(a).

### A.     The Guidelines Calculation

The parties agree upon the guidelines calculations, which are the same as set forth in the PSR. What the PSR does not reflect, of course, is the government's motion, pursuant to § 5K1.1, that Niels be granted a downward departure for substantial assistance. The commentary to § 5K1.1, comment. (n.3), provides that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance."

### B.     The History of the Defendant

Niels's history is described in detail above and in the PSR. As a result of the companies essentially going out of business, Niels suffered from burnout and has been under great stress. Attached is a report from Dr. Wim Spanganberg, a psychologist, who has treated Niels, detailing the problems. He was not able to find work for some period of time as a result of the pending charges, and thus has recently tried to form his own business. Thus, Niels has taken steps to rehabilitate himself and ensure that he does not

engage in unlawful conduct in the future.

In <u>Pepper V. United States</u>, 131 S.Ct. 1229, 1236 (2010), the Court held that courts may consider "evidence of the defendant's postsentencing rehabilitation" to "support a downward variance from the now-advisory federal Sentencing Guidelines range."  This is because evidence of such rehabilitation "may be highly relevant to several of the § 3553 (a) factors." <u>Id</u>. at 1242.  Evidence of such conduct "provides the most up-to-date picture of [the defendant's] 'history and characteristics.' §3553 (a) (1)." <u>Id</u>.  Such rehabilitation also "sheds light on the likelihood that [a defendant] will engage in future criminal conduct, a central factor that district courts must access when imposing sentence." <u>Id</u>.  This can lead to the conclusion that imprisonment is not necessary to deter future criminal conduct or to protect the public from future criminal acts, under § 3553 (a)(2)(B)-(C).  <u>Id</u>. Rehabilitation also "may be taken as the most accurate indicator of [a defendant's] 'present purposes and tendencies, and significantly to suggest the period of restraint and the kind of discipline that ought to be imposed upon [a defendant].'" <u>Id</u>. at 1242-43 (quoting <u>Pennsylvania ex rel. Sullivan v. Ashe</u>, 302 U.S. 51, 55 (1937)). Finally, evidence of such rehabilitation "bears directly on the district court's overarching duty to 'impose a sentence sufficient, but not greater than necessary' to serve the purposes of sentencing." <u>Id</u>. at 1243.

While <u>Pepper</u> dealt with rehabilitation after an initial sentencing, the principles are equally applicable, if not more so, to post-offense rehabilitation, as in Niels's case.  The

Court in Pepper specifically noted that courts have uniformly held that "post offense, presentencing rehabilitation" could be a basis for a sentence below the guidelines range. Id. at 1248 n. 16.  The guidelines allow a judge "to take account of an offender's good behavior . . . before an initial sentencing."  Id. at 1255 (Breyer, J., concurring).

Consideration of post-offense rehabilitation is particularly appropriate in Niels's case, where the events happened five years ago, and he has spent the intervening years attempting to rebuild his life.  As the court stated in United States v. Robertson, 662 F.3d 871, 879 (7th Cir. 2011), delays that ensue between the time of commission of an offense and being charged and sentenced may mean "that the relevant sentencing factors looked much different that they might have" five years "earlier."  The defendants in Robertson presented strong evidence of "self-motivated efforts to rehabilitate themselves," and had "refrained from committing any other criminal offenses."  Id.

His extensive cooperation with the government demonstrates that Niels is a "truly repentant" defendant who has "a demonstrated commitment to repair and rebuild" his life. United States v. Sally, 116 F.3d 76, 81-82 (3d Cir. 1997).  He has "changed [his life] completely...and is now a different person." United States v. DeShon, 183 F.3d 889, 889-90 (8th Cir. 1999).  See also United States v. Newlon, 212 F.3d 423, 424 (8th Cir. 2000) (affirming downward departure based on defendant's "atypical rehabilitative efforts").  At this point in the process "[a] term of incarceration would ruin [his] life and no good purpose would be served thereby."  United States v. Decora, 177 F.3d 676, 678 (8th Cir.

1999).  Likewise, Niels's lack of a criminal record is a factor the court can consider. United States v. Panice, 598 F.3d 426, 443 (7th Cir. 2010).  See also, United States v. Delaney, 651 F.3d 15, 20 (D.C. Cir. 2011) (noting that age, lack of criminal history, and rehabilitation are factors courts have considered under § 3553(a)).

A lower sentence under § 3553(a) is also permissible where a defendant has no criminal record.  "[A] district court may weigh a defendant's lack of a criminal record, even when the defendant has been placed into a criminal history category of I, in its § 3553(a) analysis."  United States v. Huckins, 529 F.3d 1312, 1319 (10th Cir. 2008).  In Huckins, the court sentenced the defendant, whose guidelines range was 78 to 97 months, to 18 months in prison.  Id. at 1314.  The court considered several factors in doing so, including no prior record; demonstrated remorse, steady employment prior to being charged; and, improving his life.  Id. at 131.

"[A] defendant's degree of remorse at sentencing may be considered as a basis for downward variance under § 3553(a) regardless of whether the defendant previously accepted responsibility."  United States v. Howe, 543 F.3d 128, 138 (3d Cir. 2008).  Nor does "remorse have to be extraordinary."  Id. (affirming sentence of probation with home confinement for defendant who went to trial, and whose guidelines range was 18-24 months).  See also, United States v. Whitehead, 532 F.3d 991, 993 (9th Cir. 2008) (affirming sentence of probation where defendant went to trial and guidelines range was 41-51 months - - defendant "repented his crime" and "had devoted himself" since his

conviction "to building an honorable life"); United States v. Rowan, 530 F.3d 379, 381 (5th Cir. 2008) (affirming sentence of probation where guidelines range was 46-57 months).

### C. The Nature and Circumstances of the Offense

As discussed above, and as acknowledged by the government, Niels recognizes and acknowledges the wrongfulness of his conduct. He attempted to set things right shortly after the government began its investigation.

### D. Seriousness of the Offense, Respect for the Law, Just Punishment

Niles recognizes the seriousness of the offense. However, as the government itself recommends, the nature and extent of his cooperation warrant a sentence of probation. Moreover, the conviction has seriously affected Niels's ability to obtain employment.

In addition, Niels voluntarily entered into an agreement with the Bureau of Industry and Security ("BIS") at the Department of Commerce, as well as the Office of Foreign Assets Control ("OFAC") at the Department of the Treasury. The agreement with BIS provides for a civil penalty of $250,000 and a three-year "bar" order, prohibiting Niels from engaging in various transactions. The fine and bar order were stayed for a period of three years, and will be waived if Niels does not engage in any prohibited transactions. The settlement became effective on March 2, 2010. The settlement was also agreed to by OFAC. Niels also came voluntarily to the United States, thus saving the government what may have been an extended extradition process.

### E. Adequate Deterrence

It is clear that Niels has been adequately deterred. The consequences he has suffered - - loss of career and a felony conviction - - are adequate deterrence to others. As described by the government, his cooperation has resulted in the convictions of two other people, as well as other investigations.

### F. Protection of the Public

There is clearly no need to incarcerate Niels to protect the public.

### G. Educational or Vocational Training, Correctional Treatment

There is clearly no need to incarcerate Niels for any kind of training or treatment.

### H. Unwarranted Sentence Disparities

As set forth in the government's memorandum, the government submitted this case to its office departure committee. Niels's cooperation was found to be sufficient to warrant the filing of a motion and an assessment of his cooperation to warrant a sentence of probation (a determination that is entitled to substantial weight). Thus, placing him on probation would not result in any unwarranted sentencing disparity.

### I. Need to Provide Restitution

There is no restitution applicable in Niels's case.

## CONCLUSION

For all the reasons discussed above, Niels respectfully requests that the court follow the government's recommendation and place him on probation.

                                        Respectfully Submitted,

                                        "/s/"
                                        A.J. KRAMER
                                        FEDERAL PUBLIC DEFENDER
                                        625 Indiana Avenue, N.W.   Suite 550
                                        Washington, D.C.   20004
                                        (202) 208-7500
                                        A. J. Kramer@fd.org